IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC BROWN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:16-CV-1843- KOB |
| MARK PETTWAY, in his official Capacity as Sheriff of Jefferson County, Alabama, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Federal authorities publicly identified Plaintiff Eric Brown, a Jefferson County Sheriff's Deputy, as potentially connected to a money laundering scheme after he purchased two cars, each with a value in excess of Mr. Brown's annual salary. The investigation did not ultimately lead to any formal charges, but Mr. Brown suffered consequences all the same—namely, that his employer placed him on administrative leave for over one year and placed administrative restrictions on him once he returned to work. Mr. Brown now alleges his race motivated his superiors to punish him as severely as they did.

This matter comes before the court on Defendant's motion for summary judgment. (Doc. 36). In the motion and his brief in support, Defendant Mark Pettway[1] asks the court to enter summary judgment in his favor on Plaintiff's race discrimination claim.

Defendant Mark Pettway, in his official capacity as Sheriff of Jefferson County, Alabama, is the only defendant remaining in this case, and the court already dismissed the only

---

[1] Mark Pettway assumed the role of Sherriff of Jefferson County on January 15, 2019, and this court substituted him as the party-defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d)(1).

other claim Mr. Brown brought against him. So ruling in Defendant's favor on this motion would constitute a final judgment in this case.

For the reasons stated below, this court WILL GRANT Defendant's motion for summary judgment. (Doc. 36).

**I. Standard of Review**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

**II. Factual Background**

Plaintiff Eric Brown has worked as a deputy sheriff for the Jefferson County Sheriff's Office (JCSO) since 2002. He worked in the Corrections Division until 2005 and then served as a Patrol Officer from 2005 until the incidents described below took place.

In 2013, Mr. Brown, along with several other parties, purchased a 1969 Chevrolet Camaro. As part of the same transaction, Mr. Brown also signed a purchase agreement for a

1967 Ford Mustang, but he denies any knowledge of or involvement with that transaction, seemingly explaining his signature on the paperwork to be a clerical oversight.

These two cars became the focus of an investigation by the United States Drug Enforcement Agency in 2014. The DEA suspected the cars were used to launder illicit "drug" money and took possession of both. The DEA also publicly identified Mr. Brown as a Jefferson County Deputy Sheriff under investigation for drug-related money laundering crimes related to the cars.

On the same day as the DEA's public announcement of its active investigation, April 10, 2014, the JCSO placed Mr. Brown on administrative leave with pay. On June 12, 2014, with the DEA investigation ongoing, the JCSO placed Mr. Brown on administrative leave without pay. One year later, with the DEA investigation pending still, the JCSO reinstated Mr. Brown but involuntarily reassigned him to work in the Corrections Division with several administrative restrictions on him: disallowing him a patrol car to take home, disallowing him from wearing a uniform outside the correctional facility, and prohibiting him from making any arrests or performing any duties outside the correctional facility. (Doc. 10 at ¶¶ 14–18). Defendant's proffered rationale for these restrictions is that "the on-going federal investigation . . . would taint any arrest Deputy Brown had to make and any testimony he had to give concerning such an arrest." (Doc. 37 at 30–31).

Alleging both race and age discrimination, Mr. Brown filed a formal complaint with the Equal Employment Opportunity Commission on October 13, 2015. The EEOC concluded its own investigation on August 14, 2016 and sent a right-to-sue letter to Mr. Brown on August 15, 2016. Mr. Brown filed this lawsuit on November 15, 2016.

Mr. Brown's amended complaint says he received the right-to-sue letter on August 18, 2016. (Doc. 10 at ¶ 12). During his deposition, Mr. Brown stated that he could not recall the day or week he received the right-to-sue letter but that he knew it was in August. (Doc. 38-1 at 29, Eric Brown's Dep. at 109:1–13).

Two months after Mr. Brown filed this lawsuit, the United States concluded its nearly three-year-long investigation and dismissed all pending actions against Mr. Brown. Almost a month later, when the JCSO learned of the dismissal, it lifted all administrative restrictions from Mr. Brown and allowed him to transfer to the Patrol Division at the next opening.

**III. Discussion**

　　A. *Subject matter of lawsuit*

Defendant argues as an initial matter that Mr. Brown's EEOC charge limits any discrimination claim to his being involuntarily assigned to the Corrections Division with administrative restrictions. Defendant argues that placing Mr. Brown on leave with pay and leave without pay between April 10, 2014 and June 11, 2015 are not at issue in this case because Mr. Brown did not exhaust his administrative remedies as to those claims before filing suit.

To exhaust all administrative remedies, a plaintiff must file a charge of discrimination with the EEOC prior to filing a Title VII action. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). This requirement allows the EEOC the opportunity to investigate the claims first and thus limits the scope of the plaintiff's lawsuit to claims included in the charge. *Id.* Though EEOC charges can be liberally construed, "a plaintiff's civil complaint remains 'limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Green v. Elixir Industries, Inc.*, 152 Fed. App'x 838,

840 (11th Cir. 2010) (quoting *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)).

Plaintiff's EEOC charge lists June 12, 2015, the date the JCSO assigned Mr. Brown to the Corrections Division, as the earliest date discrimination took place. The date is more than a year after the JCSO placed Mr. Brown on administrative leave. But Mr. Brown's EEOC charge also details his being placed on administrative leave, including specific dates. Additionally, when Mr. Brown compared his punishment to the allegedly lighter punishment of three white Deputy Sheriffs "accused of similar or more egregious crimes," he specifically mentioned that the JCSO had not placed any of them on administrative leave. Thus, the entirety of Mr. Brown's EEOC charge could conceivably give rise to an investigation that encompassed his allegations regarding being placed on administrative leave, beginning April 2014.

But regardless of the scope of the investigation of Mr. Brown's EEOC charge, Mr. Brown's claim is limited to his reassignment to the Corrections Division and the administrative restrictions placed on him, because his amended complaint does not allege any other discriminatory conduct.

Federal Rule of Civil Procedure 8(a) is a "liberal pleading standard" that requires the plaintiff to put defendants on notice of any claims against which the defendant needs to prepare a defense. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004). But a "plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Id.* at 1315 (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

Here, Mr. Brown's complaint includes factual allegations related to his being placed on leave with pay on April 10, 2014 and leave without pay on June 12, 2015. But Count I of his complaint does not incorporate any of those facts and does not refer to those disciplinary actions

in relation to Mr. Brown's race discrimination claim. Count I of Mr. Brown's complaint instead recites Title VII protections and then alleges that on "June 11, 2015, Defendant discriminated against Plaintiff with respect to his terms, conditions or privileges of employment when Defendant involuntarily reassigned the Plaintiff to the Corrections Division with restrictions." (Doc. 10 at ¶ 26). Mr. Brown's complaint failed to provide notice to Defendant that the JCSO's decisions to place Mr. Brown on leave with and without pay would be part of this lawsuit. Mr. Brown's brief opposing summary judgment attempts to amend his complaint to include the JCSO's administrative leave decisions, but Mr. Brown is limited to the claim he *actually* pled – that his reassignment to the Corrections Division with administrative restrictions was racially discriminatory. The JCSO's decisions regarding Mr. Brown's administrative leave, therefore, are irrelevant to the court's resolving the matter now before the court.

    *B. Timeliness of filing*

A plaintiff has 90 days from receipt of the EEOC right-to-sue letter to file a complaint. 42 U.S.C. § 2000e-5(f)(1). But, in the Title VII context, Federal Rule of Civil Procedure 6(e) operates to add three days to the 90-day requirement. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (1984) (citing Rule 6(e) and calculating the presumed date of receipt to be three days after the date of issue on the right-to-sue notice); *see also Robinson v. City of Fairfield*, 750 F.2d 1507, 1510 n. 4 (11th Cir. 1985).

Applying the three-day presumption to the facts of this case, Mr. Brown is presumed to have received the right-to-sue notice on August 18, 2016, three days after the date of issue, on August 15, 2016. Defendant has not offered any evidence to rebut that presumption, and November 15, 2016, is 89 days after August 18, 2016. Absent such contrary evidence, this court must presume Mr. Brown timely filed his complaint.

### C. Plaintiff's prima facie case

Defendant also asserts that Plaintiff has failed to establish a prima facie case of race discrimination.

Establishing a prima facie case for discrimination under Title VII requires "showing that the employer acted with discriminatory intent." *Hill v. MARTA*, 841 F.2d 1533, 1538 (11th Cir. 1988). A plaintiff can show discriminatory intent in one of two ways: "He may present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude. Or, in the absence of direct evidence of discrimination, he may rely on the combination of factors set forth in *McDonnell-Douglas Corp. v. Green* . . . ." *Id.*, at 1539.

Because Mr. Brown has offered no direct evidence of discriminatory intent, the court applies the burden-shifting framework of *McDonnell Douglas* to the instant case. Under the *McDonnell Douglas* framework, "the plaintiff must first create an inference of discrimination through his prima facie case." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To establish his prima facie case to create this inference, Mr. Brown must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he received less favorable treatment than a similarly situated individual outside of his protected class. *Maynard v. Bd. Of Regents of Div. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802)).

Defendant does not contest that Mr. Brown has established the first two elements, but instead argues that Mr. Brown failed to established elements three and four—that he either suffered an adverse employment action or received less favorable treatment than a similarly situated individual outside of his protected class.

i. Adverse employment action

Mr. Brown claims that the JCSO's decision to assign him to the Corrections Division and to place administrative restrictions on him were both adverse employment actions.

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) (citations of omitted). Title VII's anti-discrimination clause instead requires a plaintiff to show "a serious and material change in the terms, conditions, or privileges of employment." *Id.*, at 1239. The court determines whether "a reasonable person in the circumstances" would consider the employment action materially adverse. *Id.*

The Eleventh Circuit, in an unreported opinion, has described applying the adverse action requirement in claims involving reassignment "especially important," because generally "an employee alleging a change in work assignments, without any tangible harm, will be outside the protection provided by Title VII's anti-discrimination clause." *Hall v. Dekalb Cty. Gov't*, 503 Fed. App'x 781, 787 (11th Cir. 2013). Federal courts should not sit as "super-personnel department[s]" challenging an employer's ability to allocate its resources as it wishes. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001).

Here, the undisputed facts provide that the JCSO reassigned Mr. Brown to the Corrections Division after he returned from administrative leave. But Mr. Brown's rank and job title never changed, and he actually worked more hours and earned more money while assigned to the Corrections Division than when he had been assigned to the Patrol Division.

Mr. Brown may subjectively view an assignment in the Corrections Division as less valuable or less prestigious than an assignment in the Patrol Division. But Mr. Brown failed to provide any evidence or allege any facts showing that an assignment in the Correctional Division

constitutes an adverse change in terms, conditions, or privileges that a reasonable person in the circumstances would consider materially adverse. So this court concludes that Mr. Brown has not established a prima facie case for racial discrimination under Title VII merely because Defendant assigned him to the Corrections Division.

Defendant also placed administrative restrictions on Mr. Brown while he worked in the Corrections Division. Specifically, Defendant restricted Mr. Brown from wearing his uniform outside the Corrections Facility; from making any arrests or performing other Sheriff's duties outside of the Facility; from operating any Sheriff Department vehicles; and from engaging in outside, off duty employment as a Deputy Sheriff. (Doc. 10 at ¶¶ 14–18). While these restrictions may not have negatively affected Mr. Brown's earnings or even earning potential, the court hesitates to so narrowly define what constitutes a "privilege of employment." Because a jury could find that the *administrative restrictions* Defendant placed on Mr. Brown constituted a material adverse change to the privileges of Mr. Brown's employment as a Deputy Sheriff, the court declines to rule on summary judgment that Mr. Brown failed to establish that he suffered an adverse employment action because of his administrative restrictions.

### ii. Less favorable treatment

To create an inference of discriminatory intent, plaintiffs in employment discrimination cases must show they received treatment less favorable than similarly situated employees outside their protected class. *McDonnell Douglas*, 411 U.S. at 802. Unless someone is "similarly situated in all material respects" to the plaintiff, the plaintiff cannot use him as a comparator to establish his prima facie case under the *McDonnell Douglas* framework. *Lewis v. Union City, Ga.*, No. 15-11362, 2019 WL 1285058, at *2 (Mar. 21, 2019) (en banc). The Eleventh Circuit provided guideposts for determining when employees are similarly situated in all material respects, such

as "engag[ing] in the same basic conduct (or misconduct) as the plaintiff; . . . hav[ing] been subject to the same employment policy, guideline, or rule as the plaintiff; . . . ordinarily (although not invariably) hav[ing] been under the jurisdiction of the same supervisor as the plaintiff; and . . . shar[ing] the plaintiff's employment or disciplinary history." *Id.*, at *9 (citations omitted).

Mr. Brown's complaint identifies two potential comparators; his EEOC charge attached to his complaint identifies an additional potential comparator; and Mr. Brown identified two more potential comparators during his deposition testimony.[2] All five potential comparators are white.

Mr. Brown alleges two potential comparators did not receive administrative restrictions when they committed alcohol-related offenses (public intoxication and driving under the influence). (Doc. 10 at ¶¶ 20–21). But the duration and depth of the criminal investigations of the two white deputies differed importantly from the DEA's investigation of Mr. Brown. The Alabama Law Enforcement Agency arrested one deputy for driving under the influence, and the case remained pending for over three months. But this period did not involve an ongoing investigation into the incident; the deputy completed a 90-day substance abuse program in that time and subsequently received an order of dismissal on all charges. Similarly, Blount County

---

[2] Mr. Brown's response to Defendant's motion for summary judgment also identified five additional potential comparators but cited only Former Sheriff Mike Hale's deposition as evidence. (*See* Doc. 40 at 5–6). The deposition reveals that Plaintiff's counsel asked Sheriff Hale about five potential comparators: (1) a deputy allegedly given preferential treatment during his agility testing, (doc. 38-7 at 9, 29:10–20); (2) a sergeant who allegedly tested positive for drugs twice, (doc. 38-7 at 9, 31:21–32:11); (3) a deputy who allegedly "went AWOL" for two weeks, (doc. 38-7 at 9–10, 32:12–33:6); (4) a sergeant allegedly on "light duty" for three years, (doc. 38-7 at 11, 37:8–17); and (5) a deputy Sheriff Hale did not know and about whom neither he nor Plaintiff's counsel provided any additional details, (doc. 38-7 at 11, 37:18–20). The deposition and Mr. Brown's brief contain no more than these scant details, failing most importantly to provide any information about these five men ever being subject to a lengthy investigation by a third-party law enforcement agency. So Mr. Brown has failed to provide facts sufficient to establish any of these five men as valid comparators.

Sheriff's Office arrested another white deputy for public intoxication, but the record does not indicate that any investigation extended beyond the date of the incident.

By contrast, the DEA was actively investigating Mr. Brown throughout the period of his administrative restrictions, and the JCSO did not know when or if the DEA might formally charge Mr. Brown with criminal action. Moreover, as the Eleventh Circuit noted in its recent decision in *Lewis*, proffered comparators who did not engage in the same basic misconduct are less likely to be similarly situated in all material respects. *Lewis*, 2019 WL 1285058, at *2. So the two deputies charged with alcohol-related offenses that did not require extended investigations are not valid comparators for the purposes of Mr. Brown establishing his prima facie case.

Another potential comparator Mr. Brown identifies received a 10-day suspension after he impermissibly removed a television from a property storage room to use for a party at his house. (Doc. 38-1 at 121:7–122:5). Mr. Brown has not alleged that this incident triggered any involvement by an outside investigative body. Rather, the evidence indicates that the JCSO handled the entire affair internally.

Again, the nature of the deputy's conduct and the DEA's ongoing investigation of Mr. Brown after having publicly identified him as a potential suspect in a money laundering case present material differences between Mr. Brown's circumstances and the circumstances surrounding the internal investigation of the white deputy who impermissibly removed the television from the property room. These differences prove fatal to Mr. Brown's efforts to use the white deputy as a comparator for the purposes of Mr. Brown's prima facie case.

Finally, Mr. Brown identifies two white deputies accused of rape who received more favorable treatment than he did. Mr. Brown simply fails to substantiate the rape allegations

against one of the white deputies, pointing only to a field incident report accusing an unknown deputy of rape. Mr. Brown's own testimony constitutes the only evidence naming the white deputy as the assailant described in the incident report, and the record does not indicate that the JCSO ever learned of any rape accusation against the potential comparator.

The second deputy Mr. Brown identified as a potential comparator did face rape accusations. Specifically, a woman accused this white deputy of rape on July 30, 2013. On September 3, the Alabama Attorney General's Office concluded its review of the case and declined to charge the deputy with any crime, determining that it had insufficient evidence to warrant prosecution. Pending this final determination, the record does not indicate that the JCSO placed any administrative restrictions on the deputy, despite his being under active investigation for felony charges for roughly one month.

Apart from the differences between the misconduct alleged, the circumstances of Mr. Brown's outside investigation differ importantly from those of this white deputy in at least one additional respect—duration. While this white deputy's investigation lasted about one month, the DEA investigation of Mr. Brown lasted almost three years. And by the time the JCSO placed administrative restrictions on Mr. Brown, the DEA's investigation had already spanned an entire year with no indication of when or how it would end. Thus, this court is highly skeptical that this deputy represents a valid comparator similarly situated in all material respects.

But the articulated rationale for placing administrative restrictions on Mr. Brown focused on his potential indictment tainting his arrests and testimony, and the JCSO has not articulated a reason that this rationale would not apply with equal force to the situation involving the white deputy under active investigation for rape. So in an attempt to be thorough, this court will continue its analysis under the *McDonnell Douglas* framework as if the white deputy and Mr.

Brown are similarly situated such that the white deputy is a valid comparator and Mr. Brown has established a prima facie case for employment discrimination.

   *D. Defendant's legitimate, non-discriminatory reasons for the restrictions*

Once a plaintiff establishes his prima facie case of discrimination, the defendant then bears the burden to articulate a non-discriminatory basis for its employment action. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Defendant's proffered reason for placing administrative restrictions on Mr. Brown is "that the on-going federal investigation and on-going civil forfeiture action (which had publically identified Deputy Brown as a JCSO employee and publically connected him to alleged drug dealing and alleged money laundering) would taint any arrest Deputy Brown had to make and any testimony he had to give concerning such an arrest." (Doc. 37 at 30–31). Defendant adds that the federal authorities' refusal to share any evidence against Deputy Brown with the JCSO heightened its concerns.

This court acknowledges that criminal trials frequently require the testimony of the officer who made the underlying arrest. The court further acknowledges that an officer's prior conviction or even indictment for money laundering—a crime that requires a dishonest act or false statement—could potentially taint that officer's arrest or testimony concerning an arrest he made. Preemptive steps to prevent officers under federal investigation from making any arrests therefore strike this court as prudent.

Buttressing the veracity of this proffered rationale, the same day the JCSO learned that federal authorities had dismissed the investigation of Mr. Brown, the JCSO lifted all administrative restrictions and allowed Mr. Brown to transfer back to the Patrol Division at the next opening. So the court concludes that Defendant has met its burden of articulating a non-discriminatory basis for its employment action, removing any inference of discriminatory intent.

In response, Mr. Brown now bears the burden to show that Defendant's proffered non-discriminatory reasons are merely pretextual. Mr. Brown "can do so directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Paschal v. United Parcel Serv.* 573 Fed. App'x 823, 825 (11th Cir. 2014) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)).

But Mr. Brown fails to do either. He argues that Defendant treated white deputies who actually committed crimes more favorably than Mr. Brown, who was never charged. This argument misses the point that the JCSO's administrative restrictions were necessary *because* federal authorities had yet to charge Mr. Brown with any crime and were still investigating him after publicly announcing he was a target of the investigation.

Mr. Brown points to his valid comparator as an inconsistency in disciplinary action and argues this single inconsistency is enough for a reasonable factfinder to determine Defendant acted with discriminatory intent toward him. But the entire record does not provide sufficient evidence for a reasonable factfinder to conclude discriminatory intent.

The record indicates Defendant lifted the administrative restrictions as soon as possible after federal authorities dismissed the investigation against Mr. Brown, supporting the position that the JCSO implemented the restrictions because of the investigation, not Mr. Brown's race. Defendant has also provided three examples of deputies outside Mr. Brown's protected class who received similar or identical administrative restrictions when they were under active investigation, either internally or otherwise. (Doc. 38-5 at ¶ 23–24; doc. 38-8 at 5–6). In view of the entire record, the failure by Defendant to discipline Mr. Brown's comparator for the one month he was under investigation was the aberration—not Defendant's treatment of Mr. Brown.

Plaintiff essentially asks this court to infer from a single example of the JCSO declining to place administrative restrictions on a white deputy during a one-month investigation that all subsequent administrative restrictions placed on black officers pending investigations are discriminatory. Such a conclusion would unduly burden the JCSO's employee disciplinary actions, both past and future. So Mr. Brown fails to meet his burden of showing that a reasonable factfinder could conclude that the JCSO's proffered explanations for placing him under administrative restrictions pending the nearly three-year-long federal investigation were merely pretextual.

## IV. Conclusion

For the reasons discussed above, the court will GRANT Defendant's motion for summary judgment. Even assuming Mr. Brown established a prima facie case for race discrimination, creating an inference of discriminatory intent, Defendant provided a legal non-discriminatory reason for its adverse employment action that Mr. Brown did not show a reasonable factfinder could conclude was pretextual. The court will ENTER SUMMARY JUDGMENT in the Defendant's favor on these claims by separate order.

**DONE** and **ORDERED** this 25th day of March, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE